**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| EMMANUEL C. GONZALEZ, | § § | |
| Plaintiff, | § § | Civil Action No. 2:14-cv-00630-JRG-RSP |
| | § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| ZULILY, INC., | § § | |
| Defendant. | § § | |

**ZULILY'S MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF
WASHINGTON PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ........................................................................................................... 1

II. SEATTLE IS THE CENTER OF ALL MEANINGFUL EVIDENCE IN THIS CASE ............................................................................................................................. 2

    A.  All Zulily Employees And Documents Connected With the Accused Website Are Located in Seattle ................................................................................ 2

    B.  Non-party Witnesses Are In or Near Seattle .......................................................... 3

    C.  No Relevant Witnesses or Evidence Is Located in the Eastern District of Texas ........................................................................................................................ 4

    D.  Plaintiff Has No Connection with the Eastern District of Texas. ........................... 5

    E.  The Accused Website Has No Unique Relation to the Eastern District of Texas ........................................................................................................................ 5

III. THE CASE SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF WASHINGTON ........................................................................................................... 5

    A.  Mr. Gonzalez Could Have Filed This Lawsuit in the Western District of Washington ............................................................................................................. 6

    B.  The Private Factors Weigh Heavily in Favor of Transfer ...................................... 6

        1.  The Relative Ease of Access to Sources of Proof Factor Heavily Favors Transfer ........................................................................................... 6

        2.  The Compulsory Process Factor Favors Transfer ...................................... 8

        3.  The Cost of Attendance for Witnesses Factor Heavily Favors Transfer ........................................................................................................ 8

        4.  No Practical Problems Weigh Against Transfer ...................................... 10

    C.  The Public Interest Factors Weigh in Favor of Transfer ...................................... 10

        1.  The Court Congestion Factor Favors Transfer ........................................ 10

        2.  The Local Interest Factor Favors Transfer ............................................... 11

        3.  The Court's Familiarity With the Law Factor is Neutral .......................... 12

        4.  The Conflict of Laws Factor is Neutral .................................................... 13

IV. CONCLUSION ............................................................................................................ 13

**I.     INTRODUCTION**

Defendant zulily, inc. ("Zulily") requests that the Court transfer this matter to the Western District of Washington pursuant to 28 U.S.C. § 1404(a).  The plaintiff has no tie to this District.  Instead, the facts of the case are centered in Seattle.  It should be supervised and heard there.

The plaintiff, Mr. Gonzalez, is an individual with no ties whatsoever to this District.  He lives in the Philippines and in Vancouver B.C..  He is the sole owner of the patent, thus this case does not involve a patent owner with even minimal ties to the District, or even the state of Texas.  Indeed, the only discernable connection to Texas for Mr. Gonzalez is his law firm in Dallas.  As a matter of law this cannot justify venue. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (location of counsel is an "irrelevant and improper" transfer consideration).

Conversely, the witnesses and evidence from Zulily are in the Western District of Washington and the nonparty witnesses live in Seattle or Vancouver B.C..  Zulily's headquarters is in Seattle, approximately one mile from the courthouse.  Its entire software development staff, as well as its accounting and marketing department work at its Seattle headquarters. It is accordingly not surprising that all Zulily employees with material knowledge live and work in Seattle.  Likewise, all of Zulily's technical documents and computer code relevant to the accused website are in, or electronically controlled from, Seattle.  The company has no offices, employees, documents, or systems in this District or even in Texas.  As for nonparties, the server operations vendor that provides the server cited in the Complaint is located in Vancouver B.C..  Also, Zulily has discovered prior art systems from each of Microsoft and Amazon, both in Seattle, that were developed by their who are also in Seattle.  Accordingly, the Western District of Washington is a more convenient and appropriate forum for this litigation.  Zulily requests that the Court transfer the case there.

## II. SEATTLE IS THE CENTER OF ALL MEANINGFUL EVIDENCE IN THIS CASE

The four patents asserted in this case relate to the creation and management of digital label databases. (*See* Compl. at ECF No 1-1, ¶¶ 14, 17, 20, 23.) Mr. Gonzalez's allegations of infringement focus on the "source code, hardware, and/or software . . . [which] provide the interface, functionality, and databases comprising the Accused Website [www.zulily.com]." (*See generally*, *id*. at ¶¶ 15, 18, 21, 24.) But, all documents and witnesses relating to the Zulily website are in Seattle.

### A. All Zulily Employees And Documents Connected With the Accused Website Are Located in Seattle

The accused website was researched, designed, and developed in Seattle by Zulily's Software Development Team. (Allen Decl. ¶ 6.)[1] For example, the Software Development Team is responsible for designing and developing all functionality on the website, including the vendor and customer registration interfaces that Mr. Gonzalez appears to accuse. (*Id.* ¶ 7.) Currently, all 135 employees of Zulily's Software Development Team live and work in Seattle. (*Id..*) The Software Development Team has always been headquartered in Seattle. (*Id.* ¶ 6.) The Team has no employees anywhere else. (*Id.*)

Six of the Zulily employees most likely to testify at trial are part of the Software Development Team - Directors of Software Development, Matt Francis and Venkatesh Kaliappan; Engineering Manager VXP, Carl Sundrom; Lead Software Engineer, Mark Puckett; along with senior software engineers Kevin DeAngelis and Gordon Sun. (*Id.* ¶ 9.) They have designed and developed the accused website, and each has important information relevant to Zulily's claims and defenses in this case. All of them live and work in Seattle. (*Id.* ¶ 7.)

---

[1] The Declaration of Donald K. Allen in Support of Zulily's Motion to Transfer Venue to the Western District of Washington Pursuant to 28 U.S.C. § 1404 (a) is referred to herein as the "Allen Declaration."

The accused website was also developed, and is maintained by Zulily's Technical Operations Team in Seattle. (*Id.* ¶ 8.) Within the Technical Operations Team, there are 23 individuals who are responsible for operating and maintaining the website. (*Id.*) Senior Director of Technical Operations, Don Allen is a material witness. (*See id.*) They all live and work in Seattle. (*Id.* ¶¶ 6, 8.)

The same is true for the accounting and marketing department employees who are based in Seattle. (*Id.* ¶ 11.) The Zulily employees most knowledgeable about the marketing and associated financial aspects of Zulily's web operations are Tad Larsen, Zulily's Vice President of Accounting and Ryan Steingard, Director, Customer Marketing Programs. (*Id.* ¶13.) They both live and work in Seattle. (*Id.*)

Like the employees, Zulily's relevant documents are in Seattle, because the research, design, development and maintenance of the accused website was and is performed in Seattle. (*Id.* ¶¶ 10, 12.) To the extent the documents are electronic, *e.g.* source code, databases, and technical information relating to the website, are stored on servers located in or controlled from Seattle. (*Id.*) The hard copy documents are there too. (*Id.*)

  **B.**   **Non-party Witnesses Are In or Near Seattle**

The two known groups of nonparty witnesses are also in or near Seattle. The Complaint alleges that Zulily operates a server in Atlanta, GA (Compl. ¶¶ 15, 18, 21, 24), but this server belongs to a vendor named Peer1, Inc., which is in Vancouver, B.C.. (Allen Decl. ¶ 10a).

Also, despite the very early stage of this lawsuit, Zulily has identified relevant prior art for which discovery will be sought from companies and witnesses in or near Seattle. For instance, Amazon.com operated an "Internet-based referral system . . . [with] automated registration software that runs on the merchant's Web site to allow entities to register as

associates" described in U.S. Patent 6,029,141.[2] (Ex. A,'141 patent; *see also* McBrayer Decl. ¶¶ 2.[3]) The inventors are Jeffrey Bezos and three employees of Amazon.com, Inc. in Seattle.[4] (*Id.*) Also, for years before Mr. Gonzalez applied for the patents, Microsoft operated the MSN network, which included shopping and advertising functionalities that allowed both customers and vendors to register with and be displayed on the website. (*Id.* ¶ 3, Ex. B). Microsoft patents confirm that Microsoft's development work and developers are in Seattle. (*Id.* ¶ 4, Ex. C.) Each of these prior art systems, patents, and witnesses[5] are located in Seattle. (*Id.* ¶¶ 2-4.)

### C. No Relevant Witnesses or Evidence Is Located in the Eastern District of Texas

In contrast to the witnesses and evidence described above that are located in the Western District of Washington, no witnesses or relevant evidence are known to be located in the Eastern District of Texas. For Zulily, no relevant documents or witnesses are located in the Eastern District of Texas. (Allen Decl.¶¶ 14-15.) Plaintiff, for his part, did not plead in the Complaint or

---

[2] For comparison, the patents-in-suit here disclose "creating and encoding data about the searchable content of a website" (ECF. No. 1-2, U.S. Patent 7,647,339, at claim 1), "producing a plurality of digital labels for each said website or internet posting" (ECF. No. 1-3, U.S. Patent 7,873,665 at claim 1), "encoding personal preference digital labels . . . [which] denote the nature of the content of the website" (ECF No. 1-5, U.S. Patent 8,296,325, at claim 7) and "configuring a computer system to compile a digital label database" (ECF No. 1-1, U.S. Patent 7,558,807, at claim 3). The Amazon.com prior art describes a very similar system: the use of databases to manage subscriber and website information, including allowing "[a]n entity enrolling as an associate [to] provide[] the merchant Web site [106] with a completed, online registration application . . . the enrollment software creates an entry in the associate database [160] according to the information provided by the enrolling associate." (Ex. A,'141 patent at 6:24-30.)
[3] The Declaration of Ryan McBrayer in Support of Zulily's Motion to Transfer Venue to the Western District of Washington Pursuant to 28 U.S.C. § 1404 (a) is referred to herein as the "McBrayer Declaration."
[4] Jeffrey Bezos is the CEO of Amazon, and for this reason, is an unlikely discovery target. His presence in Seattle should be disregarded in the transfer analysis.
[5] Zulily believes Microsoft and Amazon possess prior art information beyond the systems and patents identified herein and will be seeking discovery of that information from their employees and records.

describe during the parties' conference on the motion any offices, witnesses or documents in the District (Compl. ¶ 1; McBrayer Decl. ¶ 22.)

### D. Plaintiff Has No Connection with the Eastern District of Texas.

Plaintiff is a resident of the Philippines, and has no business in or ties to this district other than his attorney's office. (Compl. ¶ 1 and p. 11).

### E. The Accused Website Has No Unique Relation to the Eastern District of Texas

The accused website is accessible from anywhere in the United States, including equally in the Western District of Washington and the Eastern District of Texas. (Allen Decl. ¶ 5.) The Western District of Washington does, however, have a unique local interest in the accused website, Zulily's employment base, and Zulily's employees because of Zulily's Seattle, Washington headquarters. (Allen Decl. ¶ 4.)

## III. THE CASE SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF WASHINGTON

This case should have been filed in the Western District of Washington. Now that it has been filed in the Eastern District of Texas, however, the Court has broad discretion to transfer it to its clearly more convenient forum. *See, e.g.*, *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) ("[a] motion to transfer venue should be granted upon a showing that the transferee venue 'is clearly more convenient than the venue chosen by the plaintiff.") (*citing In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*).

The transfer inquiry has two parts: whether the action could have been brought in the transferee court, *Volkswagen II*, 545 F.3d at 312, and if so, whether transfer is appropriate for the "convenience of the parties and witnesses" and the "interests of justice." *Id.* at 315. In determining whether transfer is appropriate, courts analyze both public and private factors

relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.*; *In re Nintendo*, 589 F.3d at 1198. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 316; *In re Nintendo*, 589 F.3d at 1198. The plaintiff's choice of venue is not a factor in this analysis. *Ultimate Pointer, LLC v. Nintendo Co., Ltd.*, 6:11-cv-00496, at *8 (E.D. Tex. 2014) (*citing Volkswagen II*, 545 F.3d at 314-15).

### A. Mr. Gonzalez Could Have Filed This Lawsuit in the Western District of Washington

Venue is proper in a patent infringement case in any district where the defendant is subject to personal jurisdiction at the time of suit. 28 U.S.C. §§ 1391(c), 1400(b). It is undisputed that Zulily's principal place of business is in Seattle, Washington, within the Western District of Washington. (Compl. ¶ 2.) Accordingly, Zulily is subject to personal jurisdiction in the Western District of Washington, and Mr. Gonzalez could have filed this lawsuit there.

### B. The Private Factors Weigh Heavily in Favor of Transfer

The private factors, and especially the most important factor - the location of the witnesses - weigh heavily in favor of transfer.

#### 1. The Relative Ease of Access to Sources of Proof Factor Heavily Favors Transfer

Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *Volkswagen II*, 545 F.3d at 316.

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor. *Id.* The Federal Circuit counsels that an alleged infringer's proof is particularly important to venue transfer analysis in patent infringement cases. *See Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) ("In patent infringement cases, the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

In *Droplets, Inc. v. eBay, Inc.*, the court found this factor weighed "heavily" in favor of transfer where all of the defendant's party witnesses and documents were located in the proposed transferee district, including:

- "engineers involved with the development of the relevant portions of the [accused] website" and "documents relating to the development of the relevant portions of the website'"; and,

- "employees responsible for accounting, sales, and marketing for the [accused] website" and "documents relating to accounting, sales, and marketing of the [accused] website";

whereas, none were located in the transferor district. Case No. 2:11-CV-00401, Dkt. 120, at pp. 6-7 (E.D. Tex. 2012). These facts are directly analogous to the present case. All of Zulily's key witnesses and documents are located in Seattle. (*See generally* Allen Decl. ¶¶ 6-13.) Among them are witnesses from Zulily's Software Development and Technical Operations Teams, witnesses from Zulily's marketing and accounting departments, and documents regarding the research, design, operation, sales and marketing of the accused website. (*Id.*) No such witnesses or documents are located in the Eastern District of Texas. (*Id.* ¶¶ 14-15.) Accordingly, this factor heavily favors transfer.

### 2. The Compulsory Process Factor Favors Transfer

The Federal Circuit has noted that where "a substantial number of witnesses [are] within the subpoena power of the [transferee] district" and "no witness who can be compelled to appear in the Eastern District of Texas," "[t]he fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, *and not only slightly*." *In re Genentech*, 566 F.3d at 1345 (emphasis added). Zulily knows of no relevant witnesses within the subpoena power of this Court. (Allen Decl. ¶14.) The Western District of Washington, to the contrary, will have subpoena power over all employees at Zulily's Seattle headquarters. *See Lindloff v. Schenectady Int'l*, 950 F. Supp. 183, 185-86 (E.D. Tex. 1996) (holding that where the court would lack subpoena power "over any Defendant's officers or employees who are outside the Eastern District and who might be unwilling to appear at trial . . . [and] it does not appear that the [transferee] court will have this problem, this factor favors transfer of th[e] case"); *see also In re Toa Techs, Inc.*, Misc. No. 153, 543 App'x 1006, 1009 (Fed. Cir. 2013) ("because party witnesses . . . were identified as residing within 100 miles of the [transferee] venue, transfer ensure that these individuals could be compelled to appear for both deposition and trial.") (*citing* Fed R. Civ. P. 45(c)(3)(A)(ii)). The Western District of Washington will also have subpoena power over documents and witnesses from Amazon and Microsoft regarding prior art systems. This factor thus weighs heavily in favor of transfer.

### 3. The Cost of Attendance for Witnesses Factor Heavily Favors Transfer

This factor is "probably the single most important factor in a transfer analysis." *In re Genentech*, 566 F.3d at 1342 (citations omitted). The Fifth Circuit uses a "100-mile rule," which looks at the relative distances between the witness' residence or work and the existing and proposed destination venues. *Volkswagen II*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor

of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Nintendo*, 589 F.3d at 1198. *See generally Volkswagen II*, 545 F.3d at 317 (convenience of witnesses favored transfer where witnesses would have to travel 155 miles from home to testify in existing venue); *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 204-05 (5th Cir. 2004) (convenience of witnesses favored transfer where witnesses would have to travel 390-400 miles from home to testify in existing venue). Additional distance from home means additional travel time, which increases the cost for meals and lodging, which further increases the time that fact witnesses must be away from their regular jobs. *Volkswagen II*, 545 F.3d at 317. For this reason, the Fifth Circuit has noted that "it is an obvious conclusion that it is more convenient for witnesses to testify at home." *Id*.

All of the individuals Zulily has identified as possibly having relevant information are located in and around the Western District of Washington. (Allen Decl. ¶¶ 9, 13.) They could drive to the courthouse from Zulily in five minutes. (McBrayer Decl. ¶ 5, Ex. D.) Moreover, trial in Seattle would allow the employees to continue working at their headquarters during trial, thus resulting in a significantly smaller disruption to Zulily's business than travel to Marshall, Texas. (Allen Decl. ¶ 16.) In contrast, to get to the Eastern District of Texas, they would have to travel 1,790 miles to Marshall (McBrayer Decl. ¶ 6. Ex. E), either on indirect flights through Shreveport, Louisiana, which requires six hours by plane and forty minutes driving (McBrayer Decl. ¶ 7, Ex. F), or through Dallas, which requires a four hour flight and more than two hours of driving. (*Id. ¶* 8, Ex. G.). This alone compels transfer. *See In re Genentech*, 566 F.3d at 1345 (ordering transfer because "a substantial number of material witnesses reside within the transferee venue . . . and no witnesses reside within the Eastern District of Texas").

The Western District of Washington is far more convenient for the non-party prior art witnesses. The known Amazon prior art development employees still live and work in Seattle. (McBrayer Decl. ¶ 2), and would experience the same travel inconveniences as Zulily employees were they to volunteer to travel to Texas. The same is true for Microsoft's prior art witnesses. (McBrayer Decl. ¶¶ 3-4.)

Meanwhile, plaintiff's travel requirements in the transfer analysis are, at best, neutral. His primary residence is in Cebu, Philippines, thus neither the Eastern District of Texas or the Western District of Washington would be convenient for trial. *See In re Genentech*, 566 F.3d at 1344 (noting that witnesses from Europe would be required to travel a significant distance no matter where they testify). On the other hand, Mr. Gonzalez has indicated that he has a residence in British Columbia, Canada (Comp. ¶ 1), which is adjacent and convenient to the Western District of Washington. A traveler from Vancouver, B.C. can be at the Western District of Washington courthouse in roughly two hours by car (McBrayer Decl. ¶ 9, Ex. H) but could not be in the Eastern District of Texas in less than four hours by airplane. (*Id.* ¶ 10-11, Exs. I-J.) Accordingly, transfer of this matter to the Western District of Washington may result in a time and cost savings even for Mr. Gonzalez.

### 4. No Practical Problems Weigh Against Transfer

The final private factor concerns other practical problems that make trial of a case easy, expeditious and inexpensive. But nothing other than the mere filing of the Complaint has happened in this case to tie it to Texas.

C. **The Public Interest Factors Weigh in Favor of Transfer**

The public interest factors all favor or are neutral to transfer.

1. **The Court Congestion Factor Favors Transfer**

The first public factor concerns the speed with which a case can come to trial and be resolved. *In re Genentech*, 566 F.3d at 1347. The docket in this District is significantly more crowded than the docket in the Western District of Washington. As of December 2013, this District has 8 judges with 1,555 pending intellectual property cases and the Western District of Washington has 7 judges with 161. (McBrayer Decl. ¶¶ 12-13, Exs. K-L.) The average time from filing to trial in the Eastern District of Texas is 20.8 months. (*Id.*) The average time from filing to trial in the Western District of Washington is 19.3 months. (*Id.*)

2. **The Local Interest Factor Favors Transfer**

The Western District of Washington has a *much* stronger "factual connection" to the case than this District. *See Volkswagen I*, 371 F.3d at 206; *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011). This is important because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I,* 371 F.3d at 206 (5th Cir. 2004).

Because Zulily is headquartered in Seattle, and because the accused website is supported there, the Western District of Washington has a strong localized interest in this action that the Eastern District does not. In particular, this lawsuit "calls into question the work and reputation" of Zulily employees residing and doing business in Seattle. *See In re Hoffmann-La Roche*, 587 F.3d at 1336 ("the [transferee venue's] local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."). The same cannot be said of anyone in this District.

Although plaintiff alleges that Zulily "transact[s]" business in the Eastern District of Texas (Compl. ¶ 5), this is not relevant because the same is equally true of every judicial district in the United States, and while it may establish minimum contacts for personal jurisdictions, it does not establish a "local interest" relevant to transfer under §1404(a). *Optimum Power Solutions LLC*, 794 F. Supp. 2d at 701 ("[f]or purposes of venue transfer analysis, local interests that could apply virtually to any judicial district . . . are disregarded in favor of particularized local interests."); *In re Toa*, 543 F.App'x at 1009 ("[I]n cases where there is a significant connection between a particular venue and a suit, the sale of a product in the plaintiff's preferred forum should not negate [the significant local interest] being weighed in favor of transfer."). This factor thus weighs strongly in favor of transfer to the Western District of Washington.

### 3. The Court's Familiarity With the Law Factor Is Neutral

This case calls for a straight-forward application of patent law. Both the Eastern District of Texas and the Western District of Washington have substantial familiarity with patent law, indeed both of them have adopted Local Patent Rules.[6] This factor is therefore neutral.

To the extent Mr. Gonzalez has other litigations involving the same patents in this district, little or no judicial activity has occurred. (*See* McBrayer Decl. ¶¶ 14-21, Exs. M-T.) Of the eight cases Mr. Gonzalez filed, all are recent. (*See* Table 1, below.) The first four were dismissed with prejudice before any answer was filed, and without any claim construction or other material involvement by the Court. (*See* Exs. P-S.) Two of the remaining cases were filed the same day as this case and the other two were filed last week. They are all in their very early stages.

---

[6] *Compare* http://www.txed.uscourts.gov/cgi-bin/view_document.cgi?document=1179 with http://www.wawd.uscourts.gov/sites/wawd/files/LRPatentRules-Final.pdf.

**Table 1.**

| Case Name | Case Number | Date Filed | Disposition |
|---|---|---|---|
| Gonzalez v. Anastasia Int'l, Inc. | 2-14-cv-00769 | July 11, 2014 | Complaint awaiting answer |
| Gonzalez v. Homes.com, Inc. | 2-14-cv-00770 | July 11, 2014 | Complaint awaiting answer |
| Gonzalez v. AutoTrader.com, Inc. | 2-14-cv-00651 | May 30, 2014 | Complaint answered (Dkt. 12). No scheduling conference or other Court action yet. |
| Gonzalez v. Social Concepts, Inc. | 2-14-cv-00650 | May 30, 2014 | Complaint awaiting answer |
| Gonzalez v. Passions Network, Inc. | 2-14-cv-00629 | May 14, 2014 | Dismissed with prejudice (Dkt. 5) |
| Gonzalez v. Bonanza.com, Inc. | 2-14-cv-00187 | March 5, 2014 | Dismissed with prejudice (Dkt. 18) |
| Gonzalez v. BlackDivine, LLC | 2-14-cv-00160 | March 3, 2014 | Dismissed with prejudice (Dkt. 18) |
| Gonzalez v. FareCompare, LP | 2-14-cv-00131 | February 24, 2014 | Dismissed with prejudice (Dkt. 17) |

None of these cases justify consideration, let alone keeping this case in this District given the party and non-party witness and evidence considerations above. *See generally In re Zimmer Holdings, Inc.*, 607 F.3d 1378, 1382 (Fed. Cir. 2010); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010) (patent owner does not get "a free pass to maintain all future litigation" in a district after pursuing an initial case in the venue).

### 4. The Conflict of Laws Factor Is Neutral

Neither district has any particular advantage with regard to conflict of laws. This factor is therefore neutral.

## IV. CONCLUSION

For the foregoing reasons, the balance of the private and public factors demonstrates that the Western District of Washington is "clearly more convenient" than the venue chosen by the Plaintiff, and Zulily requests the Court grant this Motion to Transfer.

Dated:  July 16, 2014                    Respectfully submitted,


     /s/ *Ryan McBrayer*
Ryan McBrayer
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
(206) 359-8000/ Fax (206) 359-9000
rmcbrayer@perkinscoie.com


ATTORNEY FOR DEFENDANT
ZULILY, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served on the following via email:

M. Scott Fuller
sfuller@lockelord.com
Noel F. Chakkalakal
nchakkalakal@lockelord.com
Paul D. Lein
plein@lockelord.com
Darrian L. Campbell
dcampbell@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800


Dated this 16th day of July 2014.

                                                    /s/ *Ryan McBrayer*
                                                      Ryan McBrayer

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned counsel for Defendant Zulily, Inc. met and conferred on June 20, 2014 (via phone) and again on July 11 and 14, 2014 (via email) with Scott M. Fuller, lead counsel for plaintiff, regarding the present Motion to Transfer Venue.  During these conversations, the undersigned counsel represented that Zulily requested transfer to the Western District of Washington and asked plaintiff's counsel to identify any facts known to plaintiff to suggest venue was more convenient in this District.  Plaintiff's counsel did not identify any offices, witnesses or documents in the District belonging to plaintiff, and represented that it would wait to see the filed motion and supporting affidavits.  The parties have reached an impasse motion practice is necessary to resolve this dispute.

                                                */s/ Ryan McBrayer*
                                                Ryan McBrayer